IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEDA HEALTH CORPORATION, *et al.*, | ) ) ) |
| Plaintiffs, | ) )  2:24-cv-00879-CB |
| v. | ) ) Judge Cathy Bissoon ) |
| MICHELLE HENRY, *in her official capacity as Attorney General of Pennsylvania*, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

## **ORDER**

New York Attorney General Letitia James's ("the NY AG's" or "New York's") Motion to Dismiss (Doc. 30) will be granted, and New York will be dismissed for lack of personal jurisdiction. The Court does not reach its other arguments for dismissal, and this Order has no bearing on the claims regarding Pennsylvania. Rulings as to the Commonwealth are forthcoming.[1]

---

[1] Plaintiffs are Leda Health Corporation and its CEO and co-founder, Madison Campbell. When distinction of identity is immaterial, the Court at times will refer to them collectively as "Leda." After the Hearing, Leda's deadline for responding to Pennsylvania's Motion to Dismiss was extended, by mutual request, so that the parties could explore potential resolutions. Plaintiffs filed their response in conformity with the extended deadline, and it now is clear that such discussions (to the extent they were meaningfully engaged) were fruitless. *Cf.* Pls.' Doc. 59 at 2-3 (alleging that Defendants declined to entertain serious dialogue). Hopefully, the parties have considered, or they will, that behind the adversarial posturing lie shared interests and potential opportunity. Plaintiffs' intentions are not in question. *See* Hr'g Tr. (Doc. 53) at 143-44 (Defendant's witness, testifying that Ms. Campbell "wants to help," and "has good intentions"). Their efforts cannot fairly be described as rash, unserious or lacking in consideration. They do not appear driven by profit, but rather a calling to help victims who, for any number of reasons, have not been well served by the status quo. *Id.* at 55; *id.* at 59 (discussing Leda's partnering with nonprofits to provide kits, free of charge, to vulnerable populations). There is comfort in having faith that existing protocols are sufficient, and adequately funded, to cover the bases.

New York's disclaimer of contacts with Leda in Pennsylvania, post-relocation, is not entirely convincing. Although the investigation began in New York, it followed Leda to Pennsylvania. Defendant sent a draft settlement proposal, the Assurance of Discontinuance ("the AOD"), in May 2024. This was several months after the AG learned of the relocation. Defendant's understanding and awareness was reflected in the AOD. Doc. 1-5 at ECF-header page 2 of 20, ¶ 3 ("until . . . October 2023, Leda . . . was headquartered [in] Brooklyn," and "[i]n October 2023, [it] opened an office in Pittsburgh"). Although defense counsel tries some fancy footwork regarding Leda Health, highlighting the prospect of joint offices, the AOD named Ms. Campbell as well. There is no evidence refuting her relocation to Pennsylvania. That Defendant transmitted the AOD – and ongoing communications regarding settlement – to Leda through the same lawyers is beside the point. Inconvenient to New York's arguments, of course, is the fact that some of the lawyers practiced from offices in Philadelphia.

---

While faith has its virtues, blind faith is another matter. One needed only listen to Pennsylvania's witnesses to recognize a need for examination and reflection. *See, e.g., id.* at 144 (approximately 60% of victims do not receive services through Sexual Assault Nurse Examiner, or SANE, protocols); *id.* at 147 (state-sanctioned rape kits require detailed instructions because many administering sources lack training and familiarity with SANE standards); *and id.* at 153-54 (state-collected kits can take years to be processed, and others are not processed at all). Defendant's expert conceded, moreover, that Leda's services have some utility. *Id.* at 203-204 (DNA profiling of serial perpetrators) *and* at 209-11 (contemporaneous corroboration of allegations of non-consent). The Hearing in this case was revelatory, and discrepancies between preconceived notion (as reflected in the pre-hearing briefs) and reality were stark, and numerous. With the bigger picture in view, and from a neutral perspective, it is unclear why adherence to preexisting adversarial postures would persist. It certainly cannot be assumed likely to yield best results. While it may be Pollyanna to indulge visions of alliance, peaceful co-existence between the parties does not seem a stretch. These observations should not be mistaken for arm-twisting. The Court is charged with resolving the legal matters before it, and it will do so in short order. It would be a shame, however, for opportunities to be missed through a focus on positions instead of interests. *Effectively Identifying Interests for a Successful Mediation,* 43 AUG Pa. Lawyer 42 (2021) ("Interests . . . are the silent movers behind the hubbub of positions. [A] position is something . . . decided upon. Interests are what caused [the] deci[sion].") (quoting R. Fisher, W. Ury, & B. Patton, *Getting to Yes* 40 (2d ed. 1991)).

*See* Doc. 35 at 7 n.3.  In the Court's view, the clients' location – not their lawyers' – is what matters.

New York had contacts with Leda in Pennsylvania.  The question is whether the contacts equated to purposeful availment.  Asked another way:  were the AG's contacts sufficient for her to reasonably anticipate being haled into court here?  Under the circumstances presented, the Court concludes not.

The material events are well summarized by defense counsel.  The investigation began in New York, where Leda was headquartered.  It continued there for the vast majority of the operative timeframe.  Years later, and by virtue and coincidence of Ms. Campbell having grown up here, she relocated herself and the company to Pennsylvania.  If the suggestion is that New York was required to either immediately cease its investigation, or be deemed to have purposely availed in any state Leda might relocate, the Court cannot endorse the position.

The facts are not in Plaintiff's favor.  Nor is the law.  The parties' briefing, and the Court's independent research, has failed to identify useful guidance from the Court of Appeals for the Third Circuit.  In its absence, the decision in Defense Distributed v. Grewal is instructive. *Id.*, 971 F.3d 485 (5th Cir. 2020).  The court there recognized that an AG's transmission of a cease-and-desist letter into the forum state, alone, did not equate to purposeful availment. *Id.* at 489-90.  The court found personal jurisdiction, however, because the AG in question sought to prohibit the target's conduct "anywhere, not just" in his own state. *Id.* at 493.  Having "projected himself across state lines and asserted a pseudo-national executive authority," the AG had purposely availed. *Id.*

The NY AG is dissimilar.  In all material respects, her cease-and-desist letter was tied to the state and laws of New York.  Doc. 1-4 (citing New York statutes, indicating that "New York

State provide[d] . . . evidence collection kits and examinations at no charge," alleging Plaintiffs failed to disclose services that were "free in New York," and quoting the state's department of health website). Although some generalities were offered, a large and unwarranted inferential leap is required to find them inconsistent with the repeated refrain. The draft AOD was alike. Doc. 1-5 at pg. 13 of 20 (prohibiting sales in New York).

Plaintiffs' desire to fight two battles on same front, with home field advantage, is understandable. It would, for them, be more convenient and cost-effective. The best argument for jurisdiction is, a ban in New York is tantamount to a nationwide ban. Unfortunately for Leda, the same argument could be made for every state that has challenged, or will challenge, their operations. Multiple such battles already are underway. It would be audacious for this Court to proclaim authority over all.

The NY AG has not purposely availed herself of this forum. Requiring New York to defend its laws and interests here would offend notions of comity, substantial justice and fair play. For these reasons, the AG's Motion to Dismiss (**Doc. 30**) is **GRANTED**. The case will proceed with the Pennsylvania claims only.[2]

IT IS SO ORDERED.

December 18, 2024                           s/Cathy Bissoon
                                            Cathy Bissoon
                                            United States District Judge
cc (via ECF email notification):

All Counsel of Record

---

[2] As previously referenced, rulings regarding Pennsylvania are soon to follow. If counsel wish for additional time to discuss alternative resolutions, they promptly should file a motion so indicating. Otherwise, they will lose the flexibility to craft a solution that, if no one may love, everyone can live with.