IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEDA HEALTH CORPORATION, *et al.*, ) ) | |
| Plaintiffs, ) ) | 2:24-cv-00879-CB |
| v. ) ) | Judge Cathy Bissoon |
| MICHELLE HENRY, *in her official capacity as Attorney General of Pennsylvania*, ) ) ) ) | |
| Defendant. ) | |

### **ORDER**

As previously intimated, Pennsylvania's resistance to Leda's well intentioned, and seemingly useful, efforts to supplement the Commonwealth's efforts to meet the needs of sexual assault victims is unfortunate. The Court still believes that the perfect has become an enemy of the good, and "interests" obscured by "the hubbub of positions." Doc. 63 at n.1. These impressions notwithstanding, an important question has loomed. Should the lawfulness of Pennsylvania's application of its Consumer Protection Law be decided here, or in the enforcement action brought by the Pennsylvania AG ("the AG") in state court, one day later? Under *Younger*, this Court is compelled to conclude the latter.

*Younger* precludes federal intervention in ongoing state proceedings. The state action need not predate the federal one. Hicks v. Miranda, 422 U.S. 332, 349-50 (1975). The question is whether the state action was filed before "proceedings of substance on the merits" have been undertaken. *Id.* at 350. Given the one-day filing differential, they had not. *See* Dkt. in GD-24-006798 (Ct. Comm. Pls. of Allegh. Cty., filed June 18, 2024).

Plaintiffs seek to sidestep *Younger* by focusing on when the AG's office ("the OAG") sent its cease and desist letter (May 2024). Doc. 62 at 3, 7. The proper inquiry, however, is the timing of the state action. Plaintiffs' citation to Dombrowski v. Pfister is unhelpful because the case is facially distinguishable. *Id.*, 380 U.S. 479, 490 (1965) (addressing an allegation that the state defendants lacked good faith in purporting to enforce criminal statutes "without any hope of ultimate success, [and] only to discourage . . . civil rights activities"). Their "reverse removal power" theory has not been adopted in this Circuit; nor does it fit the circumstances. *See* Tokyo Gwinnett, LLC v. Gwinnett Cty., 940 F.3d 1254, 1270 (9th Cir. 2019) ("the door to *Younger*" should not be "reopened when a plaintiff – many months after a [federal] case has been filed – amends its complaint to bring additional claims" inviting abstention; *Younger* should not be introduced "in the middle of [the federal] litigation," thus "cut[ing] the legs out from under [it]").

Plaintiffs' assertions that the state proceedings were brought merely to harass them, or in retaliation, are unconvincing. The state action was filed less than 24 hours after this one (the dockets indicate closer to 12 hours apart). *Compare* NEF for Doc. 1 (June 17, 2024 at 9:23 p.m.) *with* Dkt. in GD-24-006798 (June 18th at 10:49 a.m.). It is not credible to suggest that the AG drafted and filed the state pleading so quickly. By all appearances, it was a quintessential "race to the courthouse." That Plaintiffs were some hours quicker is not, in this context, dispositive. *See* discussion *supra* (under *Younger*, the order of filing does not control).

*Younger* extends to civil enforcement proceedings. Altice USA, Inc. v. N.J. Bd. of Pub. Utils., 26 F.4th 571, 575-76 (3d Cir. 2022) (citation to quoted and other sources omitted here, and hereafter). The state action seeks to enforce Pennsylvania's Consumer Protection Law. Abstention is appropriate if the enforcement action is quasi-criminal in nature. *Id.* at 576. This does not mean, however, that a criminal analog is required. *Id.* at 577-78. *Younger* applies

if the action was commenced by the State in its sovereign capacity, it purports to sanction wrongful conduct and there are other similarities to criminal actions, such as a preliminary investigation culminating in formal charges.  *Id.* at 576.  The Altice Court, finding these elements satisfied, vacated the district court's merits ruling and remanded the case for dismissal under *Younger*.  *Id.* at 579.

The same elements present here.  The AG's action is brought in a sovereign capacity.  It seeks to sanction wrongful conduct — alleged violations of the Consumer Protection Law.  *See* Dkt. No. 1 in GD-24-006798 (complaint) *and* Dkt. No. 12 therein (amended complaint, alleging materially similar things).  The AG requests the imposition of civil monetary penalties.  The suit resulted from the OAG's pre-suit investigation, and came after a cease-and-desist letter issued and Plaintiffs responded.  Doc. 1-3 (letter, discussing the OAG's review of Plaintiffs' materials); compl. in GD-24-006798 at ¶¶ 40, 87(e) (outlining the issuance of, and Plaintiffs' response to, the cease-and-desist letter, and seeking an award of the "cost of investigation").

All of the boxes in Altice regarding civil enforcement actions are checked; so too, the *Middlesex* factors.  Altice at 578-79.  There are ongoing proceedings, the proceedings implicate important state interests (according to the AG) and the party against whom abstention is asserted has an adequate opportunity to raise constitutional challenges.  Indeed, Plaintiffs' First Amendment arguments already have been presented in the state action.  *See* Docs. 10 & 16 in GD-24-006798 (arguing that the AG's positions violate the First Amendment).  The parallels are even more apparent in comparison to Bristol-Myers Squibb Company v. Connors, a decision cited with approval in Altice.  *See* Altice, 26 F.4th at 578 (citing Bristol-Myers, 979 F.3d 732, 737 (9th Cir. 2020), which affirmed abstention where the state proceeding was "a civil

3

enforcement action brought by the [AG] seeking civil penalties, injunctive relief and damages for unfair and deceptive acts in violation of [the state's] consumer protection law.").[1]

For these reasons, *Younger* abstention is warranted. As much as Plaintiffs may wish for this Court to reach the merits, a victory – were one secured – would be fraught with uncertainty. Circuit courts have not hesitated to vacate trial court merits decisions when they conclude that abstention is warranted. Plaintiffs' First Amendment challenges are addressed in the state proceeding. Which tribunal should decide cannot, in the undersigned's view, hinge on one side's having filed a pleading hours earlier. And, while plaintiffs typically are the masters of their cases, Leda's "plaintiff" status likewise hinges on their having won the "race," by a margin of hours – not days, months or years.

The Court's discomfort regarding Plaintiffs' invitation to exercise authority over the NY AG extends – at least to some extent – to Pennsylvania, and for good reason. The applicable legal doctrines account for a significant, overlapping interest: promoting comity between state and federal courts. *Compare* PDX North, Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev., 978 F.3d 871, 882 (3d Cir. 2020) (*Younger* abstention fosters federal courts' "respect for state functions") *with* Carlough v. Amchem Prods., Inc., 10 F.3d 189, 201 (3d Cir. 1993) (the personal jurisdiction requirement "is derived from policy considerations bearing upon comity and federalism"). While the Court's obligation to decide cases before it is "unflagging," binding precedent dictates that, when the *Younger* exception applies, the Court should – if not must –

---

[1] The Court of Appeals for the Third Circuit's decision in Smith v. Wesson is consistent, and offers Plaintiffs no quarter. Smith & Wesson Brands, Inc. v. New Jersey AG, 27 F.4th 886 (3d Cir. 2022). There, the state proceeding was a subpoena enforcement action, and the AG had "not accused the company of violating [the state's] Consumer Fraud Act." Id. at 891-93. It was not an action to punish wrongdoing, indeed, the target had "[done] nothing wrong." Id. at 892.

4

stay its hand.  PDX North, 978 F.3d at 882; *accord* Altice, 26 F.4th at 579 (abstaining under *Younger*, and vacating the district court's merits ruling).

The Court abstains, and Defendant's Motion to Dismiss (**Doc. 44**) is **GRANTED** on that basis.  Plaintiffs' Motion for Preliminary Injunction (**Doc. 2**) is **DENIED**, and the Court does not reach its merits.  Pennsylvania's handling of these matters is no secret, its "positions" are on display in the public record.  The state court may, through judicial notice, take as much or as little from this record as it deems appropriate.[2]

IT IS SO ORDERED.

January 22, 2025                                                    s/Cathy Bissoon
                                                                                 Cathy Bissoon
                                                                                 United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

[2] The citizens of the Commonwealth are stakeholders.  If the "positions" of the administration do not reflect the "interests" of its people, they have a voice and should be heard.  It is evident to this Court that rape victims in this Commonwealth are disadvantaged by the status quo.  Plaintiff Campbell has seen the need for change and believes her product provides the citizens of Pennsylvania a mechanism to secure evidence otherwise lost.  Her persistence and determination have proven a source of inspiration.  In legal representation, she has found a match.  Her counsel have displayed the highest degrees of professionalism, competence and zeal.  Although the OAG may not agree on the merits, the Commonwealth surely would concede: Plaintiffs and their counsel are formidable adversaries.  Having them as allies, not adversaries, seems a wiser course.  While the Court has suggested this vision, it cannot force anyone to see it.  Sometimes the answers to vexing issues come from the private sector.  When government has failed, perhaps there should be consideration of alternatives that provide some measure of promise, particularly when the alternative is rapists running free.